# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| CHASE A. REED,<br><br>                    Petitioner,<br><br>vs.<br><br>RANDY BLADES,<br><br>                    Respondent. | Case No. 1:16-cv-00498-REP<br><br>**ORDER ON ALL PENDING MOTIONS** |

At issue in this matter is Petitioner Chase A. Reed's Second Amended Petition for Writ of Habeas Corpus challenging his state court conviction. Dkt. 12. Respondent Randy Blades filed a Motion for Summary Dismissal, asserting that this action was not filed within the one-year statute of limitations period. Dkt. 21. United States Magistrate Judge Ronald E. Bush agreed that the Petition was untimely, but permitted Petitioner an opportunity to show that he is actually innocent, an exception under which the Court can hear an untimely petition. Dkt. 24.

Petitioner filed his brief in support of his actual innocence assertion, arguing that there was no factual evidence in the record supporting his conviction. Judge Bush ordered expansion of the record with additional state court records addressing the factual basis of the crime. *See* Dkts. 26 27, 28, 29.

ORDER ON ALL PENDING MOTIONS - 1

Upon Judge Bush's retirement, this case was reassigned to this Court. All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. Dkts. 2, 16, 18. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

The Court earlier granted in part Petitioner's motion to compel disclosure of Respondent's second supplemental lodging of state court records and ordered Respondent to produce a copy of the presentence report and the audio recording of the plea hearing to Petitioner for review, and to lodge a copy of the audio record with the Clerk of Court. Dkt. 39.

Petitioner has filed a "Motion Responding to Order on All Pending Motions," and Respondent has filed a Response. Dkts. 44, 45. Having reviewed the entire record and considered the parties' arguments, the Court enters the following Order on all pending motions.

## 1. Background

In 2001, Petitioner, his fiancée, and his fiancée's nine-year-old daughter S.N.W. lived together in in Coeur d'Alene, Idaho. Petitioner began sexually abusing S.N.W. when she was nine years old. *See* Dkt. 25-3, pp. 1-2. He continued to sexually abuse her in their Idaho home through 2002, when the family moved to Washington state. *See id*. A son was born to Petitioner and his fiancée while they lived together. Petitioner's sexual abuse of S.N.W. continued in Washington until she was 14 years old, when she told her mother of the abuse. Her mother and Petitioner decided they would use self-help methods to address the problem and researched pedophilia at the public library.

When the abuse did not stop, S.N.W. notified Washington state police that Petitioner had been sexually abusing her for about four years. Petitioner was charged with and pleaded guilty to first degree rape of a child and second degree rape of a child in Spokane County, Washington court. Two counts of child molestation were dismissed as a result of his plea agreement in that court. Petitioner was sentenced to probation.

As a result of the Washington investigation, Idaho officials were notified of the allegations of abuse that had occurred in Idaho. Petitioner was charged by the filing of an information (Dkt. 25-4) and a criminal complaint (Dkt 25-3). His Washington probation was interrupted by detention in an Idaho jail.

On August 4, 2006, with the advice of counsel, Petitioner waived his right to a preliminary hearing. *See* Dkt. 25-2, p. 2. It seems obvious from the record that Petitioner's counsel recommended waiving the preliminary hearing because Petitioner already was on intensive probation for the companion case in Washington and that counsel's strategy was to streamline the case with the purpose of obtaining a concurrent sentence of probation in Idaho—a difficult task given that child sexual abuse convictions carry up to a life sentence in Idaho. Petitioner and his counsel were successful in obtaining a plea agreement with the Idaho prosecutor for a recommendation of a concurrent probation term.

On August 31, 2006, Petitioner entered a guilty plea to one count of lewd and lascivious conduct with a child under sixteen, and the other count of the information was dismissed. On October 20, 2006, the Idaho state court indicated that the reason that

**ORDER ON ALL PENDING MOTIONS - 3**

Petitioner received a light sentence in Idaho was that it was crafted to match the

Washington sentence that was already in effect:

> Having entered the plea of guilty to the charge of lewd
> conduct with a minor child under the age of sixteen, it is the
> judgment of the Court that you're guilty of that crime as
> charged.
>
> As I've indicated, I will follow the provisions of the Rule 11
> which do contemplate placing you on probation. The reason
> for that, the reason I think it does meet the goals of sentencing
> is that you have already been sentenced and are under way
> with the probation in the state of Washington on – essentially
> this was a continuing course of activity that occurred in both
> Idaho and Washington, so you've already been sentenced on
> the – with regard to the overall course of conduct in the state
> of Washington. That appears to be going forward positively at
> this point.

State's Lodging E-5, pp. 8-9. Underlying the probation term was a sentence of five years

fixed with fifteen years indeterminate, suspended during the time Petitioner successfully

remained on probation. *See* Dkt. 25-2, p. 3.

In 2009, Plaintiff was charged in Washington with failure to register as a sex

offender. State's Lodging E-6, p. 100. He was found guilty of that charge and spent 60

days in the Spokane County Jail. During that time, the state of Idaho placed a hold on

him, and he was transported to Idaho to face probation violation charges. Both courts also

noted that, when Petitioner lost his job and had been sleeping in his van in August 2009,

he moved into the apartment of a woman who had two minor daughters. He paid the

woman $300 per month for rent, and slept on her couch in the living room for six weeks.

He did not reveal to the woman that he was a sex offender. *Id*., pp. 100-101. No abuse

allegations arose from these living arrangements.

**ORDER ON ALL PENDING MOTIONS - 4**

In 2010, Petitioner was charged with violating his Idaho probation terms. On August 9, 2010, Petitioner's probation was revoked upon a guilty finding. His original prison sentence was imposed. State's Lodging E-2.

Six years later, on July 5, 2016, Petitioner filed a motion to vacate the criminal conviction for lack of subject matter jurisdiction and a motion for summary judgment in the state district court. *See* State's Lodging A-1, p. 15. On August 26, 2016, the state district court construed his motions together as a post-conviction petition and denied the "petition" as untimely. *Id.*, pp. 26-36. The state district court alternatively denied the motions as without merit as a matter of law. *Id.*

On June 12, 2017, Petitioner filed a new state court action, this time designating it a petition for post-conviction relief. It was construed as a successive post-conviction petition. On September 19, 2017, the Honorable Judge Cynthia K.C. Meyer held a hearing on the State's motion for summary disposition that had been fully briefed by the parties. The court held the hearing without Petitioner because he "did not request to appear telephonically and was not transported to the hearing." State's Lodging A-2, p. 2. Therefore, only the State's counsel attended and argued at the hearing.

Thereafter, the state court determined:

> Petitioner's claims are unsupported by fact and constitute bare allegations. In his petition, amended petition, and reply brief, petitioner alleges, among other things, that the public defender "colluded" with the prosecution and the district court to prevent Petitioner from exercising his constitutional right against self-incrimination. Petitioner also claims that the district court failed to maintain its gatekeeping function by accepting Petitioner's guilty plea. Petitioner has presented no

facts or affidavits containing otherwise verifiable information to support his claims. Thus, Petitioner is not entitled to relief.

State's Lodging A-2, pp. 10-11.

In this federal habeas corpus case, Petitioner brings three claims that mirror those rejected by the state district court, articulated by Petitioner as follows:

> 1. "The magistrate judge failed to obtain felony subject-matter jurisdiction over me before he accepted the waiver of my preliminary hearing, which was not given knowingly as no evidence exists. Felony subject-matter jurisdiction is only possible if evidence exists" [Fifth and Fourteenth Amendment].
>
> 2. "The District judge failed his gatekeeping duties by accepting a guilty plea, when there was no evidence to support that plea—The plea was not given knowingly. He also did not have felony subject-matter jurisdiction, as there was no evidence" [Fifth and Fourteenth Amendment].
>
> 3. "The public defender (Martin Neils) colluded with prosecution and the judge by not stopping me from being a witness against myself, when there was no evidence that a crime had been committed. Public defender failed to provide me with effective counsel when he allowed me to enter a guilty plea, when there was no evidence to support such a plea, and a plea could not be given knowingly. There is no sufficient factual basis for a guilty plea, therefore guilty plea is invalid" [Fifth and Sixth Amendment].

Dkt. 12, pp. 5-7.

## 2.  Standard of Law Governing Actual Innocence Exception

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations, and that the exception applies where a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513

**ORDER ON ALL PENDING MOTIONS - 6**

U.S. 298 (1995). *McQuiggin v. Perkins*, 569 U.S. 383, 387 (2013). To make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 569 U.S. at 394-94 (quoting *Schlup*, 513 U.S. at 329); *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001) (applying same standard to guilty plea cases). This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21; *Larsen v. Soto*, 742 F.3d 1083, 1095-96 (9th Cir. 2013) (noting that the "*Schlup* standard 'is demanding,' *Perkins*, 569 at 385, and that "precedents holding that a habeas petitioner satisfied its strictures have typically involved dramatic new evidence of innocence.").

Actual innocence must be premised on "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 64, 623 (1998). A petitioner must support his allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence, *see Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). As to timing, "[a] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *Perkins*, 569 U.S. at 385.

With regard to petitioners who pleaded guilty and later assert actual innocence, the

United States Supreme Court has observed:

> [T]he representations of the defendant, his lawyer, and
> the prosecutor at [a plea] hearing, as well as any findings
> made by the judge accepting the plea, constitute a formidable
> barrier in any subsequent collateral proceedings. Solemn
> declarations in open court carry a strong presumption of
> verity. The subsequent presentation of conclusory allegations
> unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly
> incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

### 3. Lodging of State Court Records

Petitioner asserts that the State has never produced "the evidence used to

corroborate the guilty plea," as ordered by Judge Bush. Dkt. 44, p. 1; Dkt. 27, p. 2.

Petitioner argues that the charging information does not contain a factual basis for the

criminal counts. *Id*., p. 2. To the contrary, a review of the record shows that Respondent

has lodged all of the documents required by the Court. Dkt. 24, 25, 27, 29, 39, 42.

### 4. Consideration of Petitioner's Assertions that the Conviction is without a Factual Basis and that He is Actually Innocent

The Court gave Petitioner notice that his gateway actual innocence assertion and

his three substantive habeas corpus claims appeared to be without a factual or legal basis.

Dkt. 39. Petitioner has been provided with sufficient portions of the state court record for

him to make his argument on the gateway issues and substantive claims.

### A.  Whether there is a Factual Basis underlying the Conviction

Petitioner requests that the Court rule in his favor because, in Petitioner's words, "All along I have said that my guilty plea was invalid as corroborating evidence would have to be given for it to be valid." Dkt. 35, p. 1 (spelling regularized). A prisoner's allegation that he is being held on a criminal conviction *for which no factual basis for the crime exists* is considered a serious matter, even where the statute of limitations deadline has passed.

The supplemental state court records paint an entirely different picture. As explained in detail in the next section of this Order, the state court record contains many different admissions from Petitioner that he committed the specific acts supporting Count 1, his count of conviction by guilty plea. The record reflects that the victim's version of events matched Petitioner's version. The victim's version of events is sufficient evidence on its own to support the conviction.

The law is clear that, when the government uses a defendant's admissions to bolster a case that is already legally adequate, no additional corroboration is necessary. *See United States v. Calderon*, 348 U.S. 160, 167-69 (1954). Here, there was independent evidence of the defendant's guilt, and therefore there was no danger that the court was relying solely on the defendant's uncorroborated confession to convict. *See Smith v. United States*, 348 U.S. 147, 156 (1954) (either "independent evidence or corroborated admissions" are sufficient).

Here, the victim's testimony is independent evidence of the factual basis of the crime; in other words, had Petitioner remained silent and proceeded to trial, the State

planned to call the victim as a witness to support all of the elements of the criminal charge. Petitioner's testimony at the change-of-plea hearing is therefore a corroborated admission. There is sufficient evidence in the state court record to support the state court's jurisdiction over the matter and its acceptance of the guilty plea. Petitioner's assertion that the was no factual basis for his conviction is unfounded, given the victim's report and anticipated trial testimony, supported by his own written and oral admissions.

### B. Whether Petitioner has Shown Actual Innocence to Excuse his Untimely Filing or to Support his Claims

The original Idaho state court record lodged by Respondent was for the purpose of demonstrating that the statute of limitations was not met. Because Petitioner pleaded guilty, waived the preliminary hearing, and did not file a direct appeal, the record was sparse as to the factual basis of the crime. The supplemental records have filled in that gap. Petitioner's Idaho crimes were part of a continuation of abuse against the same victim that culminated in the Washington judgment of conviction. Petitioner's argument that there is no factual basis for the conviction is one of legal insufficiency—which does not support a claim of factual innocence—and, moreover, the alleged legal insufficiency argument has been countered by the lodging of additional state court records.

The current record shows that the minor victim told a friend, E.A., about the sexual abuse, and E.A. called law enforcement to report the crimes. The next day the minor victim contacted law enforcement herself. She reported sexual abuse perpetrated by Petitioner, lasting over several years, that was very similar to Petitioner's later admissions. *See* State's Lodging E-6, with exhibits.

**ORDER ON ALL PENDING MOTIONS - 10**

The charging documents gave Petitioner notice of the acts underlying the criminal charges. Petitioner, through counsel, waived his preliminary hearing, as the law permits him to do. Several times he said he was genuinely remorseful for having committed the acts. Dkt. 12. Petitioner is now left with explaining to the Court whether he was untruthful when he made those admissions and when he expressed deep regret for his acts.

In the face of the state court record containing his admissions, Petitioner has provided no facts showing that he did not commit the acts forming the factual basis of the crimes. A habeas corpus action is not a criminal case, but a civil case. Petitioner bears the burden to show actual innocence. He has not done so.

Petitioner's ability to bring forward new facts in support of his actual innocence claim is circumscribed by the Idaho district court's rejection of those same facts in his state post-conviction cases. This Court is not free to disregard the factfinding of a state court in the actual innocence setting. In *Sharpe v. Bell*, 593 F.3d 372 (4th Cir. 2010), the court reasoned that when a state court has reviewed the "same body of relevant evidence and applie[d] essentially the same legal standard to that evidence that the federal court does under *Schlup*, Section 2254(e)(1) requires that the state court's findings of fact not be casually set aside." *Id*. at 379.

Ten years after he pleaded guilty, Petitioner first asserted that he is not guilty, even though he knew he signed his name to a "written guilty plea" that specified, "I enter this plea freely, voluntarily and knowing that the judge could sentence me to the maximum punishment for the crime(s) I have pled guilty [sic]," and "I did the things and acts

alleged in the charge(s) to which I pled guilty." State's Lodging E-3, pp. 2-3. The

charging information specified the factual basis of the crimes. Dkt. 25-4. When he

changed his plea to guilty, Petitioner stated in open court that he had "seen" the

information. State's Lodging E-4. The ten-year delay and all of these admissions weigh

against Petitioner's claim of actual innocence.

The newly-lodged audio recording of the state district court change-of-plea

hearing shows that Petitioner stated that he understood he was pleading guilty to the

criminal charges filed against him. State's Lodging E-7. He stated he understood Count 2

was going to be dismissed pursuant to the plea agreement. The court struck that count by

interlineation in open court. The court stated that Petitioner was pleading guilty to one

count of lewd conduct with a minor under the age of 16 that was punishable by a term of

imprisonment up to a term of life. Petitioner stated he understood that this was the range

of punishment he could receive upon pleading guilty to Count 1. *Id.*

Petitioner waived the right to have the entire charging document read to him by

the state district court. Petitioner was then informed that the court must make a record

showing that he knew what he was pleading guilty to, and that the court would make that

record by asking him questions to support that showing. The court reviewed all of the

general change-of-plea questions with him, including that he was able to read, write, and

understand English; that he was free from mental defects that would prevent him from

understanding; that there were no medications or other reasons that would make it hard

for him to understand what the hearing was about; and that he had nothing physically,

mentally or emotionally going on that day that would impair his ability to understand the

hearing and consider his options. Petitioner's answers indicated he understood English and was not impaired in any way from understanding the content of the hearing. *Id*.

The court then explained the rights he would be giving up if he pleaded guilty on that day, including the right to a jury trial, to require the State to produce witnesses against him in court, and to require the State to prove its case beyond a reasonable doubt to a unanimous jury.

The court reviewed the right to remain silent in detail. Plaintiff said he understood that the court was going to ask him about the facts behind the charges and he would *not* have to answer those if he chose to remain silent and proceed to jury trial. The court informed Petitioner that, in pleading guilty, he was giving up the right to contest anything about the case other than sentencing-related issues. Petitioner indicated that he understood all the rights he was giving up. State's Lodging E-7.

The court then stated the charge and Petitioner pleaded guilty to Count 1. The court explained that the Rule 11 joint sentencing recommendation was to sentence him to probation to run concurrent with his Washington sentence for the same type of sexual abuse of the same victim that occurred in that state. The state district judge stated he didn't know if he was going to follow that recommendation or not, but that Petitioner could later change his mind about the plea if the judge informed him he was not going to follow the plea agreement. *Id*.

Petitioner said there were no other side agreements or predictions of what the court was going to do that he was relying upon to plead guilty. Petitioner acknowledged that the guilty plea was his own decision, and was not the product of  attorney coercion or

any other coercion. The court asked Petitioner if one of the reasons he decided to plead guilty was because he agreed that he actually *did* the things the State *said* he did. Petitioner answered, "Yes." The Court paraphrased Count 1 as follows: "Several years ago in about 2001, about five years ago, you committed this lewd act upon this minor about 9 or 10 years old and it was by some type of manual to genital or genital to genital or some contact of that nature, and it was done with intent to arouse your sexual desires or that of the minor child." The judge then asked, "That is what the State said you did, and you have read that, and you agree that is at least one of the reasons you are pleading guilty?" Petitioner said, "Yes." State's Lodging E-7.

The presentence report contains additional details of the facts underlying the crimes set forth in the charging information, as well as admissions that Petitioner committed the crimes of which he was convicted in Washington and Idaho. That report contains a psychosexual evaluation, in which psychologist, Dr. Paul M. Wert, reported:

> Chase Reed acknowledged that sexual contacts with [S.N.W.] began within one year of the time he met Shelley Parsons [S.N.W.'s mother]. S.N.W. would have been nine years of age at the time. According to Chase, she "she had been curious about some things, and had asked some questions, and it went from there." Chase acknowledged ongoing sexual contacts from the time S.N.W. was nine until she was fourteen. When asked how many separate contacts there may have been, Chase Reed acknowledged that there were many, remarking, "I know it was a lot." On numerous occasions, Chase Reed would fondle S.N.W.'s vaginal area or breasts. He would have her masturbate him to a point of ejaculation. He also had her fellate him on numerous occasions. On one occasion, he engaged S.N.W. in an act of cunnilingus. [ ] The client acknowledged that if S.N.W. wanted a soda, or to go to a friend's for an overnight, she would first have to comply with Chase's sexual requests. According to Chase, the sexual

**ORDER ON ALL PENDING MOTIONS - 14**

> contacts averaged two or three times per month. Chase
> acknowledged that S.N.W. on one occasion told him that she
> wanted the incidents to stop. They stopped for a period of
> time, but when S.N.W. at some point said she wanted
> something again, Chase again sexually abused her. He
> remarked that "I kind of pressured her into doing it by not
> letting her do what she wanted." [ ] According to Chase Reed,
> when he first began sexually abusing S.N.W., they had agreed
> that she would not disclose the abuse.

State's Lodging E-6, p. 3.

Petitioner also wrote in the presentence investigation questionnaire: "I sexually molested the victim SNW orally and with my hands and had her do the same to me over 4-5 years. Chase Reed Aug/31/06." *Id*. He wrote that he felt "[a]bsolutely terrible" about the acts. *Id*. At the sentencing hearing, Petitioner and his counsel twice admitted that they had read the presentence report that included the foregoing admissions and had no "updates … corrections or edits to it." State's Lodging E-5, p. 2, 7.

## 5. Conclusion

After being provided with the supplemental state court records, Petitioner still has not pointed to any evidence to show that he is actually innocent, such that the threshold statute of limitations issue can be excused. He does not raise anything in the newly-produced audio recording of the change of plea hearing or the presentence report that shows he did not commit the crimes. He merely restates his position in vague terms that the conviction and guilty plea lack a factual basis.

In light of the newly-lodged records, together with the state district court's explanation of why Petitioner's subject matter jurisdiction arguments were meritless

(contained in the previously-lodged records), the Court concludes that Petitioner's Second Amended Petition rests on frivolous grounds. Petitioner's three substantive claims have the same factual basis as his actual innocence argument presented to excuse the untimeliness of his federal filing. Because his actual innocence claim is frivolous, his substantive claims are also frivolous. This Court is permitted to deny habeas corpus claims on the merits instead of, or in the alternative to, a decision on threshold procedural issues. *Lambrix v. Singletary*, 520 U.S. 518 (1997). Therefore, this case is alternatively dismissed on grounds of untimeliness and denied for lack of merit. Accordingly, the Petition will be dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion Responding to Order on all Pending Motions (Dkt. 44), construed as a response and objection to the Court's notice of intent to dismiss the Petition for Writ of Habeas Corpus, is DENIED and OVERRULED.

2. The Second Amended Petition for Writ of Habeas Corpus (Dkt. 12 ), and this entire action, are DENIED and DISMISSED with prejudice on the alternative grounds of lack of merit and untimeliness.

3. The Court does not find its resolution of this habeas matter on either ground to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of

Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability

from the Ninth Circuit by filing a request in that court.

DATED:  June 10, 2022

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge